## WILSON

v.

## TEXAS ELECTRIC SERVICE CO. et al.

### No. 5005.

Court of Civil Appeals of Texas.

El Paso.

Feb. 10, 1954.

Rehearing Denied March 10, 1954.

John J. Watts, Odessa, for appellant.

Crowley, Hudson & Keltner, Fort Worth, Turpin, Kerr & Smith, Midland, Stowe & Harman, Odessa, for appellees.

McGILL, Justice.

Appellant as plaintiff brought this suit for damages under the wrongful death statute for the death of her husband, Charles S. Wilson, and as next friend of her minor son, Charles Len Wilson. The defendants were Bishop Building Company, Inc., Texas Electric Service Company, a corporation, and Perry Sneed, d/b/a Sneed Construction Company. Trial was to a jury, but after all parties had rested the court on motions of Texas Electric Service Company and Bishop Building Company, Inc., instructed a verdict in favor of these defendants against plaintiff, whereupon plaintiff took a non-suit against defendant Perry Sneed without prejudice, and judgment was rendered accordingly.

Appellant's points of error are that the court erred in holding that the evidence was insufficient to raise an issue of fact as to whether Texas Electric Service Company was guilty of negligence, and gross negligence, as pleaded and proved by plaintiff, and in holding that the evidence was insufficient to raise the issue of gross negligence of defendant Bishop Building Company, Inc., as pleaded and proved by plaintiff. As to the Texas Electric Service Company the negligence alleged was that the Texas Electric Service Company violated Art. 1436 of the Revised Civil Statutes of Texas which, affords utility companies the right to condemn land for right of way purposes and the right to erect transmission lines over roads, railroads, etc. It was plaintiff's claim that the line here located was located in violation of Art. 1436 upon private property and that therefore the electric company was guilty of negligence per se because it had violated the statute. Plaintiff also alleged that the Texas Electric Service Company was negligent in that it knew that buildings were being erected in the Parker Heights Addition daily, and that all of the houses required the use of cranes, and that the company knew or should have known in the exercise of ordinary care that such cranes would reach into the air a distance of 35 feet or at least high enough to come in dangerous proximity to their deadly electric lines, and that with knowledge that said lines were so situated and human life was daily being endangered the defendant failed, after discovery of the perilous and dangerous condition of plaintiff and others similarly situated, to raise the lines sufficiently high that there would be no danger of a crane coming in contact with the same, and its failure to maintain such lines at a height where they would be free from danger of coming in contact with cranes constituted negligence and gross negligence which was the proximate cause of the damage to plaintiff.

We have read the entire statement of facts in an effort to determine whether there was any evidence to go to the jury or any issue as against the electric company and the Bishop Building Company. A rather full statement of the facts is therefore imperative.

The Bishop Building Company, Inc., was engaged in constructing a one-story building on Lot 13, Block 1, Parker Heights Addition to the city of Odessa. The building was about 8 feet in height above the surface of the ground and was being built across a lot 25 feet in width. In depth the building did not extend to the alley in the rear, but was 10 feet from the alley line. The accident did not occur on Lot 13, but on Lot 12 adjoining it to the south. There was a furniture store located on this lot and the back of this store was 30.9 feet from the alley. The building which the Bishop Building Company was constructing called for a stretoscrete roof, which came in slabs weighing around 1400 pounds. In order to raise these slabs to the roof a crane was required. The Bishop Building Company employed the Sneed Construction Company to do this work. There is no question but that the Sneed Construction Company was an independent contractor, since it furnished the crane and the operators thereof for a set price of some $12 per hour, and the Bishop Building Company did not supervise the details of the work. The half truck on which the crane was located was placed to the rear of the furniture store and the slabs were lifted to the roof of the building on the adjoining lot. The Electric Service Company wire which was involved in the accident was 32 feet 4 inches in height above the surface of the land. It was 1.8 feet west of the west side of the alley, that is, over lot 12 that distance from its east boundary line. The crane being used in the hoisting operations hit the electric line or came in such proximity to it that the electricity jumped to the crane at the height of 32 feet 4 inches above the ground, 7.7 feet south of the south wall of the building under construction and electrocuted the plaintiff's husband, who was engaged in helping unload the slabs from the truck. The electric company's poles had been installed in August 1950 for the purpose of servicing a grocery store then being built on the block in question. When the line was strung in 1950 there was no building in the west half of Block 1 of the Parker Heights Addition, the half block which is involved in this suit. The grocery store was under construction in 1950 and after it was completed a drugstore was built and the furniture store back of which the accident occurred was built, and a laundry building was built. The rest of the block consisted of vacant lots. All of the buildings built in the block were one-story buildings. The accident occurred within the corporate limits of the city of Odessa, in which the electric company maintains about a thousand miles of wire.

The deceased, Charles Wilson, had worked for the Bishop Building Company for about three months prior to the accident and had been working on the building under construction for about 30 days.

On the day of the accident the Bishop Building Company, Inc., had arranged with Sneed Construction Company to have a 35-foot crane at the job site to install the roofing material atop of the building. The Atlas Building Products Company of El Paso, which had sold the building material to Bishop Building Company had two of its trucks with their roofing material at the place where the building was under construction. The truck was placed immediately back of the furniture store and the Atlas truck and trailer was jockeyed into parked position partly on lot 12 and partly in the alley back of the furniture store lot. After the crane and the truck and trailer were in position the workmen discussed and heard discussion about the overhead electric wire and the danger of working in proximity to same. One of the witnesses who worked for the Atlas company refused to work on the truck and the deceased, Mr. Wilson, took his place. This witness testified that he thought it was too dangerous for him to work on. There was evidence that the operator of the crane was inexperienced and incompetent and that Sneed Construction Company had been so notified and had sent another man to supervise the operation of the crane, also that the crane had come in contact with one of the electric wires prior to the time when the deceased was killed, and that the operations had been stopped by

the Bishop Building Company when the crane first came in contact with the wire, and were shut down for about 45 minutes until Sneed furnished another man to supervise the operation. There is evidence in the record that the electric company knew that cranes had been operated in the city of Odessa, but there is no evidence that it knew that any crane had ever been operated in Parker Heights Addition prior to the accident. The Bishop Construction Company carried workmen's compensation and plaintiff seeks to hold them on the theory of gross negligence.

■ The fact that the wire of the Electric Company extended approximately one foot eight inches over lot 12 did not violate Art. 1436 R.C.S. This statute expressly provides that corporations such as the electric company shall have the right to condemn and appropriate private lands for the erection of their power lines. The fact that such a company does not condemn private property for this purpose does not make the erection of its line over private property unlawful if it has the consent of the owner to do so. The plaintiff did not prove that the electric company did not have the consent of the owner to place its lines over lot 12, and there is some testimony in the record to the effect that the owner had no objection to its doing so. Art. 1436a, Vernon's Ann.Civ.St., provides that

> "Except as modified or changed by ordinance or regulation in incorporated cities and towns, all lines for the transmission of electric energy, whether along highways or elsewhere, shall be constructed, operated and maintained, as to clearances, in accordance with the National Electric Safety Code, as published in March, 1948, by the National Bureau of Standards, Handbook 30".

It was shown that this National Electric Safety Code provides that the wires shall be at least 20 feet above the ground. At the time the wires were put up by the electric company the block in question was sparsely settled. Appellant does not contend that the electric company was negligent in placing the wires 32 ft. 8 inches above the ground at the time that it did place them. The contention is that the appellee electric company knew or should have known that this block in Parker Heights was being built up and that cranes or similar devices would be used there and that the company was therefore negligent in not raising its wires to such height that such cranes would not come in contact with them. We do not agree with this contention. There is evidence that cranes had been used in Odessa before the accident but there is no evidence that the electric company knew that any cranes had been used in Parker Heights prior to the accident. The company had the right to assume that if cranes or any other device was used which would render its use dangerous because of their wires that the company would be notified and asked to cut off the electricity which it always did when requested. We find no evidence of negligence on the part of Texas Electric Service Company.

■ We also fail to find any evidence of gross negligence on the part of Bishop Building Company. It will be recalled that appellant did not seek actual damages against the Bishop Building Company because it was covered by workmen's compensation insurance. The work of hoisting stretoscrete slabs was being done by the Sneed Construction Company as an independent contractor. It is true that Wilson was an employee of Bishop Building Company. The evidence fails to show that Bishop or anyone connected with the Bishop Building Company with the possible exception of Wilson, appreciated the danger from the overhead wires. The fact that Bishop requested Sneed to send a more competent operator of the crane tends to show that he was not guilty of "conscious indifference" for the welfare of Wilson or any other employee. The court did not err in directing a verdict in favor of the Bishop Building Company.

The judgment is affirmed.

HAMILTON, C. J., not sitting.